UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LUZ MAZARIEGO DE UMANA, as mother and natural
guardian of F.U.M., an infant under the age of fourteen
years, and LUZ MAZARIEGO DE UMANA individually,

                              Plaintiff(s),

               -against-

UNITED STATES OF AMERICA,

                            Defendant(s).
-------------------------------------------------------------------X

**AMENDED
COMPLAINT**

Plaintiffs Demand
Trial by Jury

Case No.: 1:23-cv-1080
(MAD/MJK)

Plaintiffs, complaining of the Defendant, by their attorneys **THE GUCCIARDO LAW FIRM,**

**PLLC**, respectfully allege, upon information and belief, as follows:

## NATURE OF CASE

1)    This is an action for medical malpractice personal injuries sustained by Plaintiffs,

LUZ MAZARIEGO DE UMANA, as mother and natural guardian of F.U.M., an infant under the

age of fourteen years (hereinafter, "F.U.M."), and LUZ MAZARIEGO DE UMANA individually,

pursuant to the Federal Tort Claims Act, (28 U.S.C. § 2671 *et seq*) and  28 U.S.C. §1346 (b)(1)

and for any other cause(s) of action that emanate can be inferred from the facts set forth herein.

2)    On September 9-10, 2020, Defendant UNITED STATES AMERICA's employees,

namely Marta Maria Sanchez, M.D., Dominique Delma, M.D., Farnaz Jafari, M.D., Devashree

Parmer, M.D., Meea Yim, D.O., and others, of the Institute for Family Health, Kim S. Petro, R.N.,

Mary J. Randall, R.N., Healthalliance Hospital Broadway Campus, Prabhakar Kocherlakota, M.D.

(a/k/a Dr. KP), Joseph Debra, M.D., Michael Ignat, D.O. and others, deviated and departed from

accepted standards of medical care and treatment of the plaintiffs herein. By among other things,

in failing to properly and timely diagnose and treat plaintiffs; failing to properly monitor Plaintiff's

labor and delivery; in failing to perform a timely cesarean section to deliver F.U.M, resulting in

hypoxia, brain damage, neurological impairments, and other injuries that will permanently and drastically impair F.U.M.'s development and abilities for the rest of his life, and will result in LUZ MAZARIEGO DE UMANA's permanent, drastic loss of services of her son, F.U.M., for the remainder of her life, as well as monetary damages, including costs and expenses of care, treatment, maintenance, and upkeep as a result of F.U.M.'s neurological impairments. Plaintiff brings claims for pain, suffering, the loss of enjoyment of life, economic damages, medical and other expenses, and all other damages permissible by law.

<u>**PARTIES**</u>

3)    At all times relevant, Defendant UNITED STATES OF AMERICA was a sovereign nation, was jointly severally, and vicariously liable for the tortious conduct of Marta Maria Sanchez, M.D., Dominique Delma, M.D., Farnaz Jafari, M.D., Devashree Parmer, M.D., Meea Yim, D.O., and others, of the Institute for Family Health, Kim S. Petro, R.N., Mary J. Randall, R.N., Healthalliance Hospital Broadway Campus, Prabhakar Kocherlakota, M.D. (a/k/a Dr. KP), Joseph Debra, M.D. and Michael Ignat, D.O., are appropriate Defendants under the Federal Tort Claims Act.

4)    At all times relevant, KIM S. PETRO, R.N. and MARY J. RANDALL, R.N.  were registered nurses duly licensed to practice as such in the State of New York, a resident of the County of Ulster, State of New York, was professionally affiliated with Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS, and was an employee, agent and/or servant of Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

5)    At all times relevant, PRABHAKAR KOCHERLAKOTA, M.D. (a/k/a Dr. KP) was the Neonatologist Attending in the NICU, duly licensed to practice as such in the State of New York, a resident of the County of Ulster, State of New York, was professionally affiliated with

Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS, and was an employee, agent and/or servant of Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

6)      At all times relevant, JOSEPH DEBRAH, MD. was a physician duly licensed to practice as such in the State of New York, a resident of the County of Ulster, State of New York, was professionally affiliated with Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS, and was an employee, agent and/or servant of Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

7)      At all times relevant, MICHAEL IGNAT, D.O. was a physician duly licensed to practice as such in the State of New York, a resident of the County of Ulster, State of New York, was professionally affiliated with Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS, and was an employee, agent and/or servant of Defendant HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

## JURISDICTION – Federal Question

8)      The Court has Jurisdiction pursuant to the provisions of 42 U.S.C. § 1331 and 28 U.S.C § 1346(b)(1).

## VENUE

9)      Pursuant to 42 U.S.C. § 1391 and 28 U.S.C. § 1402(b), venue is proper in the Northern District of New York as the cause of action accrued in the Northern District.

## PROCEDURAL PREREQUISITES

10)     By the filing of this Complaint, Plaintiff complied with all statutory, jurisdictional, and other prerequisites to filing the instant action.

11)     This Amended Complaint is timely filed pursuant to Magistrate Mitchell J. Katz Uniform Pretrial Scheduling Order (Pacer Doc. 41) dated November 12, 2024.

12)     The incidents giving rise to this matter occurred on September 9-10, 2020.

13)    On or about June 9, 2022, Plaintiffs duly served upon the United States Department of Health and Human Services, separate SF95 Claims for Damages on behalf of Plaintiff herein, LUZ MAZARIEGO DE UMANA, and Infant-Plaintiff herein, F.U.M. together with copies of the medical records of Nyack Hospital, Westchester Medical Center, HealthAlliance Broadway Campus, Dr. Rolla Nuoman, Dr. Valerie Sprenz, Dr. Christina Scelfo, Dr. Suzette Gnonaj, Dr. Maria Abbate, and Sarah Corrigan, P.T.

14)    On or about August 10, 2022, Plaintiffs' counsel received a letter from The United States Department of Health and Human Services, by Ms. Virgie R. Barnes, Paralegal Specialist, Tort Section, acknowledging receipt of administrative tort claims on behalf of Plaintiff herein, LUZ MAZARIEGO DE UMANA, and Infant-Plaintiff herein, F.U.M.

15)    On or about January 19, 2023, upon information and belief, AUSA Lesperance informed Plaintiffs' counsel that Marta Maria Sanchez, M.D., Dominique Delma, M.D., Farnaz Jafari, M.D., Devashree Parmer, M.D., Meea Yim, D.O. were employees of the Institute for Family Health, a federally funded community health center, and were acting within the scope of that employment of the United States of America at the time of the incidents alleged in the Ulster County Action.

16)    On or about August 25, 2023, AUSA Lesperance removed the Ulster County Action to the United States District Court for the Northern District of New York, now pending under Case No.: 1:23-cv-1080 (MAD/ATB).

17)    On or about December 6, 2024, upon information and belief, AUSA Reynolds informed Plaintiffs' counsel that Joseph Debra, M.D. and Michael Ignat, D.O. were employees of the Institute for Family Health, a federally funded community health center, and were acting within the scope of that employment of the United States of America at the time of the incidents alleged in the Ulster County Action.

18)    To date, Plaintiffs have complied with each request for information from of the United States Department of Health and Human Services.

19)    To date, the United States Department of Health and Human Services has not issued a denial of Plaintiffs' administrative claims.

20)    More than six months have passed since the date of filing of the administrative claims with the United States Department of Health and Human Services.

21)    The Complaint is timely and appropriate against Defendant, UNITED STATES OF AMERICA pursuant to the "deemed denial" provisions of 28 U.S.C. § 2675(a).

22)    The instant action is commenced timely and after exhausting all necessary administrative, statutory, and other procedural prerequisites.

### AS AND FOR A FIRST CAUSE OF ACTION IN MEDICAL MALPRACTICE AND NEGLIGENCE ON BEHALF OF PLAINTIFF F.U.M.

23)    LUZ MAZARIEGO DE UMANA is the mother and natural guardian of F.U.M.

### AS TO DEFENDANT, MARTA MARIA SANCHEZ, M.D.

24)    At all times herein mentioned, MARTA MARIA SANCHEZ, M.D., was a physician duly licensed to practice medicine in the State of New York.

25)    At all times herein mentioned, MARTA MARIA SANCHEZ, M.D., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

26)    At all times herein mentioned, MARTA MARIA SANCHEZ, M.D., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

27)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee

under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

28)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

29)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of MARTA MARIA SANCHEZ, M.D., relative hereto.

30)    At all times herein mentioned, MARTA MARIA SANCHEZ, M.D., held herself out to the general public to be a physician and competent to render medical services.

31)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

32)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

33)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

34)    From on or about September 9-10, 2020, and continuing MARTA MARIA SANCHEZ, M.D., was in a patient-physician relation with the Plaintiff F.U.M.

35)    From on or about September 9-10, 2020, and continuing MARTA MARIA SANCHEZ, M.D., rendered medical care and/or treatment to the Plaintiff F.U.M.

36)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

37)    From on or about September 9-10, 2020, and continuing MARTA MARIA SANCHEZ, M.D., breached her professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

38)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

39)    The causes of action against MARTA MARIA SANCHEZ, M.D., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

40)    The negligence, carelessness, and culpable conduct of MARTA MARIA SANCHEZ, M.D., constituted deviations and departures from good and accepted standards of care and practice.

41)    As a result of the negligence, recklessness, carelessness, deviations and departures by MARTA MARIA SANCHEZ, M.D., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards

of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

42)     At all times herein mentioned, MARTA MARIA SANCHEZ, M.D., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

43)     From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

### AS TO DEFENDANT, DOMINIQUE DELMA, M.D.

44)     At all times herein mentioned, DOMINIQUE DELMA, M.D., was a physician duly licensed to practice medicine in the State of New York.

45)     At all times herein mentioned, DOMINIQUE DELMA, M.D., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

46)     At all times herein mentioned, DOMINIQUE DELMA, M.D., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

47)     THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued

without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

48)    From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

49)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of DOMINIQUE DELMA, M.D., relative hereto.

50)    At all times herein mentioned, DOMINIQUE DELMA, M.D., held herself out to the general public to be a physician and competent to render medical services.

51)    From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

52)    From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

53)    From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

54)    From on or about September 9-10, 2020, and continuing DOMINIQUE DELMA, M.D., was in a patient-physician relation with the Plaintiff F.U.M.

55)    From on or about September 9-10, 2020, and continuing DOMINIQUE DELMA, M.D., rendered medical care and/or treatment to the Plaintiff F.U.M.

56)    From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

57) From on or about September 9-10, 2020, and continuing DOMINIQUE DELMA, M.D., breached her professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

58) From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

59) The causes of action against DOMINIQUE DELMA, M.D., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

60) The negligence, carelessness, and culpable conduct of DOMINIQUE DELMA, M.D., constituted deviations and departures from good and accepted standards of care and practice.

61) As a result of the negligence, recklessness, carelessness, deviations and departures by DOMINIQUE DELMA, M.D., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost

and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

62)     At all times herein mentioned, DOMINIQUE DELMA, M.D., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

63)     From on or about September 9-10, 2020, and continuing, DOMINIQUE DELMA, M.D., rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

### AS TO DEFENDANT, DEVASHREE PARMER, M.D.

64)     At all times herein mentioned, DEVASHREE PARMER, M.D., was a physician duly licensed to practice medicine in the State of New York.

65)     At all times herein mentioned, DEVASHREE PARMER, M.D., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

66)     At all times herein mentioned, DEVASHREE PARMER, M.D., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

67)     THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

68)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

69)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of DEVASHREE PARMER, M.D., relative hereto.

70)    At all times herein mentioned, DEVASHREE PARMER, M.D., held herself out to the general public to be a physician and competent to render medical services.

71)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

72)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

73)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

74)    From on or about September 9-10, 2020, and continuing DEVASHREE PARMER, M.D., was in a patient-physician relation with the Plaintiff F.U.M.

75)    From on or about September 9-10, 2020, and continuing DEVASHREE PARMER, M.D., rendered medical care and/or treatment to the Plaintiff F.U.M.

76)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

77)    From on or about September 9-10, 2020, and continuing DEVASHREE PARMER, M.D., breached her professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management,

consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

78)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

79)    The causes of action against DEVASHREE PARMER, M.D., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

80)    The negligence, carelessness, and culpable conduct of DEVASHREE PARMER M.D., constituted deviations and departures from good and accepted standards of care and practice.

81)    As a result of the negligence, recklessness, carelessness, deviations and departures by DEVASHREE PARMER, M.D., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

82)    At all times herein mentioned, DEVASHREE PARMER, M.D., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

83)    From on or about September 9-10, 2020, and continuing, DEVASHREE PARMER, M.D., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

### AS TO DEFENDANT, MEEA YIM, D.O.

84)    At all times herein mentioned, MEEA YIM, D.O., was a physician duly licensed to practice medicine in the State of New York.

85)    At all times herein mentioned, MEEA YIM, D.O., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

86)    At all times herein mentioned, MEEA YIM, D.O., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

87)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

88)    From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

89)     THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of MEEA YIM, D.O., relative hereto.

90)     At all times herein mentioned, MEEA YIM, D.O., held herself out to the general public to be a physician and competent to render medical services.

91)     From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

92)     From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

93)     From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

94)     From on or about September 9-10, 2020, and continuing MEEA YIM, D.O., was in a patient-physician relation with the Plaintiff F.U.M.

95)     From on or about September 9-10, 2020, and continuing MEEA YIM, D.O., rendered medical care and/or treatment to the Plaintiff F.U.M.

96)     From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

97)     From on or about September 9-10, 2020, and continuing MEEA YIM, D.O., breached her professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

98)     From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable

with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

99)    The causes of action against MEEA YIM, D.O., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

100)    The negligence, carelessness, and culpable conduct of MEEA YIM, D.O., constituted deviations and departures from good and accepted standards of care and practice.

101)    As a result of the negligence, recklessness, carelessness, deviations and departures by MEEA YIM, D.O., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

102)    At all times herein mentioned, MEEA YIM, D.O., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

103)    From on or about September 9-10, 2020, and continuing, MEEA YIM, D.O., rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

**AS TO DEFENDANT, FARNAZ JAFARI, M.D.**

104)    At all times herein mentioned, FARNAZ JAFARI, M.D., was a physician duly licensed to practice medicine in the State of New York.

105)    At all times herein mentioned, FARNAZ JAFARI, M.D., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

106)    At all times herein mentioned, FARNAZ JAFARI, M.D., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

107)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

108)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

109)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of FARNAZ JAFARI, M.D., relative hereto.

110)    At all times herein mentioned, FARNAZ JAFARI, M.D., held herself out to the general public to be a physician and competent to render medical services.

111)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

112)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

113)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

114)    From on or about September 9-10, 2020, and continuing FARNAZ JAFARI, M.D., was in a patient-physician relation with the Plaintiff F.U.M.

115)    From on or about September 9-10, 2020, and continuing FARNAZ JAFARI, M.D., rendered medical care and/or treatment to the Plaintiff F.U.M.

116)    From on or about September 9-10, 2020, and continuing FARNAZ JAFARI, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

117)    From on or about September 9-10, 2020, and continuing FARNAZ JAFARI, M.D., breached her professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

118)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

119)    The causes of action against FARNAZ JAFARI, M.D., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

120)    The negligence, carelessness, and culpable conduct of FARNAZ JAFARI, M.D., constituted deviations and departures from good and accepted standards of care and practice.

121)    As a result of the negligence, recklessness, carelessness, deviations and departures by FARNAZ JAFARI, M.D.,  Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

122)    At all times herein mentioned, FARNAZ JAFARI, M.D., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

123)    From on or about September 9-10, 2020, and continuing, FARNAZ JAFARI, M.D., rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

124)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH had its principal place of business at 2006 Madison Avenue, New York, New York 10035.

125)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH was a business entity with its principal place of business in the County of ULSTER, State of New York.

126)    THE INSTITUTE FOR FAMILY HEALTH is a resident of the County of ULSTER, State of New York.

127)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH offered the general public, for a consideration, medical and/or osteopathic care and services.

128)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH offered the general public, for a consideration, medical and or/ osteopathic care and services.

129)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH offered the general public, for a consideration, nursing care and services.

130)    At all times herein mentioned, THE INSTITUTE FOR FAMILY HEALTH held itself out to the general public to be competent and qualified to render medical and/or osteopathic care and services.

131)    From on or about September 9-10, 2020, and continuing, THE INSTITUTE OF FAMILY HEALTH owed a professional duty to Plaintiff F.U.M. as a provider of medical and/or osteopathic services.

132)    From on or about September 9-10, 2020, and continuing, THE INSTITUTE OF FAMILY HEALTH, through its agents, servants, employees and/or others for whose acts and omissions it is legally responsible, breached its professional duty to Plaintiff LUZ MAZARIEGO DE UMANA., and was careless, negligent and chargeable with culpable conduct in its treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA., and

in the medical, osteopathic and/or nursing services, it rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

133)    The carelessness, negligence and culpable conduct of, THE INSTITUTE FOR FAMILY HEALTH, constituted deviations and departures from good and accepted standards of care and practice.

134)    As a result of the negligence, recklessness, carelessness, deviations and departures by THE INSTITUTE FOR FAMILY HEALTH, Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

135)    As a result of the negligence, recklessness, carelessness, and departures by defendants, jointly and severally, Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent, as previously referenced, and the consequences and *sequelae* thereof.

136)    As a result of the foregoing, Plaintiff F.U.M. sustained serious, severe, and permanent injuries, and the consequences and *sequelae* thereof.

137)    Marta Maria Sanchez, M.D., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

138)    Dominique Delma, M.D., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

139)    Farnaz Jafari, M.D., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

140)    Devashree Parmer, M.D., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

141)    Meea Yim, D.O., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

142)    Prabhakar Kocherlakota M.D. (a/k/a Dr. KP), and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

143)    Joseph Debrah, M.D., and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

144)    Michael Ignat, D.O. and others, of THE INSTITUTE FOR FAMILY HEALTH were acting in the scope of employment and under the auspices of the Defendant, the UNITED STATES OF AMERICA.

145)    Defendant, UNITED STATES OF AMERICA is vicariously liable for the acts and/or omissions of all Defendants herein, and others, of the Institute for Family Health/Health Alliance Hudson Valley Broadway Campus.

146)    Infant Plaintiff F.U.M. seeks damages for pain, suffering, the loss of enjoyment of life, economic damages, medical expenses, and all other damages permitted by law in an amount of Eighty Million Dollars ($80,000,000.00).

**AS TO DEFENDANT PRABHAKAR KOCHERLAKOTA, M.D. (a/k/a Dr. KP)**

147)    At all times herein mentioned, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), was a physician duly licensed to practice medicine in the State of New York.

148)    At all times herein mentioned, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

149)    At all times herein mentioned, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP) was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

150)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

151)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

152)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), relative hereto.

153)    At all times herein mentioned, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP)., held herself out to the general public to be a physician and competent to render medical services.

154)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

155)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), rendered medical care and/or treatment to F.U.M.

156)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

157)    From on or about September 9-10, 2020, and continuing PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), was in a patient-physician relation with the Plaintiff F.U.M.

158)    From on or about September 9-10, 2020, and continuing PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), rendered medical care and/or treatment to the Plaintiff F.U.M.

159)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

160)    From on or about September 9-10, 2020, and continuing PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP) breached her professional duty to Plaintiff LUZ

MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

161)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP) breached her professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

162)    The causes of action against PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP) include but are not limited to failing properly to manage the care and treatment of F.U.M. status post-delivery; in failing to appreciate and timely respond to signs of fetal distress; in failing to timely to render proper neo-natal care to F.U.M. within the standard of care; in failing to render the proper care and  in and such other acts and omissions as may be revealed through discovery.

163)    The negligence, carelessness, and culpable conduct of PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP)., constituted deviations and departures from good and accepted standards of care and practice.

164)    As a result of the negligence, recklessness, carelessness, deviations and departures by PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care

facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

165)    At all times herein mentioned PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP), was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

166)    From on or about September 9-10, 2020, and continuing, PRABHAKAR KOCHERLAKOTA, M.D (a/k/a Dr. KP)., rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

**AS TO DEFENDANT JOSEPH DEBRA, M.D.**

167)    At all times herein mentioned, JOSEPH DEBRAH, M.D. was a physician duly licensed to practice medicine in the State of New York.

168)    At all times herein mentioned, JOSEPH DEBRAH, M.D. was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

169)    At all times herein mentioned, JOSEPH DEBRAH, M.D. was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

170)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of

Primary Health Care, Health Resources and Services Administration of the United States of America.

171)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D. rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

172)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of JOSEPH DEBRAH, M.D., relative hereto.

173)    At all times herein mentioned JOSEPH DEBRAH, M.D., held himself out to the general public to be a physician and competent to render medical services.

174)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

175)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

176)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D., owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

177)    From on or about September 9-10, 2020, and continuing JOSEPH DEBRAH, M.D., was in a patient-physician relation with the Plaintiff F.U.M.

178)    From on or about September 9-10, 2020, and continuing JOSEPH DEBRAH, M.D., rendered medical care and/or treatment to the Plaintiff F.U.M.

179)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

180)    From on or about September 9-10, 2020, and continuing JOSEPH DEBRAH, M.D. breached his professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless,

negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

181)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D.b reached his professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

182)    The causes of action against JOSEPH DEBRAH, M.D. include but are not limited to failing to properly manage the care and treatment of F.U.M. status post-delivery; in failing to appreciate and timely respond to signs of fetal distress; in failing to timely to render proper neo-natal care to F.U.M. within the standard of care; in failing to render the proper care and  in and such other acts and omissions as may be revealed through discovery.

183)    The negligence, carelessness, and culpable conduct of JOSEPH DEBRAH, M.D.., constituted deviations and departures from good and accepted standards of care and practice.

184)    As a result of the negligence, recklessness, carelessness, deviations and departures by JOSEPH DEBRAH, M.D. Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to

suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

185)    At all times herein mentioned JOSEPH DEBRAH, M.D. was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

186)    From on or about September 9-10, 2020, and continuing, JOSEPH DEBRAH, M.D. rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

## AS TO DEFENDANT MICHAEL IGNAT, D.O.

187)    At all times herein mentioned, MICHAEL IGNAT, D.O. was a physician duly licensed to practice medicine in the State of New York.

188)    At all times herein mentioned, MICHAEL IGNAT, D.O.  was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

189)    At all times herein mentioned, MICHAEL IGNAT, D.O.  was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

190)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

191)     From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O. rendered patient care to the Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

192)     THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of MICHAEL IGNAT, D.O., relative hereto.

193)     At all times herein mentioned MICHAEL IGNAT, D.O., held himself out to the general public to be a physician and competent to render medical services.

194)     From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O., was in a patient-physician relation with the Plaintiff LUZ MAZARIEGO DE UMANA.

195)     From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O.., rendered medical care and/or treatment to the Plaintiff LUZ MAZARIEGO DE UMANA.

196)     From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O. owed a professional duty to Plaintiff LUZ MAZARIEGO DE UMANA as a provider of medical services.

197)     From on or about September 9-10, 2020, and continuing MICHAEL IGNAT, D.O. was in a patient-physician relation with the Plaintiff F.U.M.

198)     From on or about September 9-10, 2020, and continuing MICHAEL IGNAT, D.O., rendered medical care and/or treatment to the Plaintiff F.U.M.

199)     From on or about September 9-10, 2020, and continuing MICHAEL IGNAT, D.O. owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

200)     From on or about September 9-10, 2020, and continuing MICHAEL IGNAT, D.O. breached his professional duty to Plaintiff LUZ MAZARIEGO DE UMANA, and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation,

diagnosis, and care of Plaintiff LUZ MAZARIEGO DE UMANA, and in the medical services she rendered to and on behalf of Plaintiff LUZ MAZARIEGO DE UMANA.

201)    From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O. breached his professional duty to Plaintiff F.U.M., and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of Plaintiff F.U.M., and in the medical services she rendered to and on behalf of Plaintiff F.U.M.

202)    The causes of action against MICHAEL IGNAT, D.O. include but are not limited to failing to properly manage the care and treatment of F.U.M. status post-delivery; in failing to appreciate and timely respond to signs of fetal distress; in failing to timely to render proper neo-natal care to F.U.M. within the standard of care; in failing to render the proper care and  in and such other acts and omissions as may be revealed through discovery.

203)    The negligence, carelessness, and culpable conduct of MICHAEL IGNAT, D.O. constituted deviations and departures from good and accepted standards of care and practice.

204)    As a result of the negligence, recklessness, carelessness, deviations and departures by MICHAEL IGNAT, D.O., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to

suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

205)    At all times herein mentioned MICHAEL IGNAT, D.O.. was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

206)    From on or about September 9-10, 2020, and continuing, MICHAEL IGNAT, D.O. rendered patient care to the Plaintiff LUZ MAZARIEGO DE UMANA with the authority of THE INSTITUTE FOR FAMILY HEALTH.

## AS TO DEFENDANT, JOSEPH DEBRAH, M.D.

207)    At all times herein mentioned, Defendant JOSEPH DEBRAH, M.D., was a physician duly licensed to practice medicine in the State of New York.

208)    At all times herein mentioned, Defendant JOSEPH DEBRAH, M.D., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

209)    At all times herein mentioned, Defendant JOSEPH DEBRAH, M.D., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

210)    THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

211)    From on or about September 9-10, 2020, and continuing, Defendant JOSEPH DEBRAH, M.D., rendered patient care to the infant Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

212)    THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of JOSEPH DEBRAH, M.D., relative hereto.

213)    At all times herein mentioned, Defendant JOSEPH DEBRAH, M.D., held himself out to the general public to be a physician and competent to render medical services.

214)    From on or about September 9-10, 2020, and continuing, Defendant JOSEPH DEBRAH, M.D., was in a patient-physician relation with the infant Plaintiff F.U.M.

215)    From on or about September 9-10, 2020, and continuing, Defendant JOSEPH DEBRAH, M.D., rendered medical care and/or treatment to the Infant Plaintiff F.U.M..

216)    From on or about September 9-10, 2020, and continuing, Defendant JOSEPH DEBRAH, M.D., owed a professional duty to infant Plaintiff F.U.M. as a provider of medical services.

217)    From on or about September 9-10, 2020, and continuing, MARTA MARIA SANCHEZ, M.D., owed a professional duty to Plaintiff F.U.M. as a provider of medical services.

218)    From on or about September 9-10, 2020, and continuing Defendant JOSEPH DEBRAH, M.D. breached his professional duty to infant Plaintiff F.U.M. and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of infant Plaintiff F.U.M., and in the medical services she rendered to and on behalf of infant Plaintiff F.U.M.

219)    The causes of action against Defendant JOSEPH DEBRAH, M.D., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing

to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

220)    The negligence, carelessness, and culpable conduct of Defendant JOSEPH DEBRAH, M.D., constituted deviations and departures from good and accepted standards of care and practice.

221)    As a result of the negligence, recklessness, carelessness, deviations and departures by Defendant JOSEPH DEBRAH, M.D., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

222)    At all times herein mentioned, Defendant JOSEPH DEBRAH, M.D., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

223)    From on or about September 9-10, 2020, and continuing, Defendant JOSEPH DEBRAH, M.D., rendered patient care to the infant Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

**AS TO DEFENDANT, MICHAEL IGNAT, D.O.**

224) At all times herein mentioned, Defendant MICHAEL IGNAT, D.O., was a physician duly licensed to practice medicine in the State of New York.

225) At all times herein mentioned, Defendant MICHAEL IGNAT, D.O., was professionally affiliated with and had admitting privileges at HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

226) At all times herein mentioned, Defendant MICHAEL IGNAT, D.O., was an employee, agent and/or servant of THE INSTITUTE FOR FAMILY HEALTH at the time of the incidents giving rise to this suit.

227) THE INSTITUTE FOR FAMILY HEALTH was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2019, and that its coverage has continued without interruption since that time and is deemed an entity as a Public Health Service employee under 42 U.S.C. (§) 233(g) and has ben delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration of the United States of America.

228) From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O., rendered patient care to the infant Plaintiff F.U.M. with the authority of THE INSTITUTE FOR FAMILY HEALTH.

229) THE INSTITUTE FOR FAMILY HEALTH is legally responsible for the acts and omissions of Defendant MICHAEL IGNAT, D.O., relative hereto.

230) At all times herein mentioned, Defendant MICHAEL IGNAT, D.O., held himself out to the general public to be a physician and competent to render medical services.

231) From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O., was in a patient-physician relation with the infant Plaintiff F.U.M.

232)    From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O., rendered medical care and/or treatment to the Infant Plaintiff F.U.M.

233)    From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O., owed a professional duty to infant Plaintiff F.U.M. as a provider of medical services.

234)    From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O., owed a professional duty to infant Plaintiff F.U.M. as a provider of medical services.

235)    From on or about September 9-10, 2020, and continuing Defendant MICHAEL IGNAT, D.O. breached his professional duty to infant Plaintiff F.U.M. and was careless, negligent, and chargeable with culpable conduct in the treatment, management, consultation, diagnosis, and care of infant Plaintiff F.U.M., and in the medical services she rendered to and on behalf of infant Plaintiff F.U.M.

236)    The causes of action against Defendant MICHAEL IGNAT, D.O., include but are not limited to failing properly to manage the care and treatment of the labor and delivery, in failing to appreciate and timely respond to signs of fetal distress, failing timely to deliver the baby and/or have the baby delivered, and such other acts and omissions as may be revealed through discovery.

237)    The negligence, carelessness, and culpable conduct of Defendant MICHAEL IGNAT, D.O., constituted deviations and departures from good and accepted standards of care and practice.

238)    As a result of the negligence, recklessness, carelessness, deviations and departures by Defendant MICHAEL IGNAT, D.O., Plaintiff F.U.M. sustained serious and permanent physical and emotional injuries, which are permanent; he has suffered severe injuries to his brain, neurological system and elsewhere, and their consequences and *sequelae*; he has suffered and will

suffer from the effects of Defendants' deviations and departures from good and accepted standards of care and practice; he has been rendered incapacitated; he has been unable to pursue his usual activities, has been and will be confined to medical and rehabilitation/care facility, has been and will be compelled to submit to hospital, rehabilitative, surgical and medical care and attention and to incur various sums of money in an endeavor to cure or alleviate his injuries, and for his care, has lost and will lose sums of money, including wage loss and related losses, and has been compelled to suffer physical pain, mental anguish, disability and emotional distress, and will continue to suffer these damages in the future.

239)    At all times herein mentioned, Defendant MICHAEL IGNAT, D.O., was authorized to render care and treatment to Plaintiffs at the HEALTHALLIANCE HOSPITAL BROADWAY CAMPUS.

240)    From on or about September 9-10, 2020, and continuing, Defendant MICHAEL IGNAT, D.O. rendered patient care to the infant Plaintiff F.U.M with the authority of THE INSTITUTE FOR FAMILY HEALTH.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF LUZ MAZARIEGO DE UMANA**

241)    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the First Cause of Action with the same force and effect as if more fully set forth at length herein.

242)    As a result of the aforesaid occurrences and injuries sustained by Plaintiff F.U.M., Plaintiff LUZ MAZARIEGO DE UMANA has been deprived of the services of her son F.U.M., and will continue to be deprived of the same in the future as a result of the foregoing; and has been and will be caused to incur costs and expenses for F.U.M.'s treatment, care and maintenance.

243)    Plaintiff seeks damages for the loss of services of her son, F.U.M. throughout his lifetime, and the amount which she will be caused to expend and incur for F.U.M.'s care,

maintenance, health needs, and upkeep throughout his lifetime, in the amount of Twenty Million

Dollars ($20,000,000.00)

WHEREFORE, Plaintiffs LUZ MAZARIEGO DE UMANA, as mother and natural

guardian of F.U.M. and LUZ MAZARIEGO DE UMANA individually, demand judgment against

Defendants on the First and Second Causes of Action for all damages permissible by law in such

a sum as demanded herein together with interest, costs, and disbursements of this action.

Dated:  Mineola, New York
        November ___, 2024

                                     Respectfully yours,

                                     _____

                                     CHARLES S. GUCCIARDO
                                     ***THE GUCCIARDO LAW FIRM, PLLC***
                                     Attorneys for Plaintiffs
                                     170 Old Country Road, Suite 609
                                     Mineola, New York 11501
                                     (516) 280-7100

## CERTIFICATE OF MERIT (CPLR 3012-a)
## (MEDICAL MALPRACTICE ACTION)


Charles S. Gucciardo**,** an attorney admitted to practice in the Northern District of New York and attorney for the plaintiff herein, affirms the truth of the following under penalties of perjury:

## [CHECK THE APPLICABLE BOX]:


1.    \_\_X\_\_\_ I have reviewed the facts of the case and have consulted with at least one physician who is licensed to practice in this State or any other State and whom I reasonably believe is knowledgeable in the relevant issues involving this particular action, and I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action;

2.    \_\_\_\_\_ I was unable to obtain the consultation required by CPLR 3012(a)(1) because a limitation of time established by Article 2 of said law would bar the action and that the certificate required could not reasonably be obtained before such time expired.

3a.    \_\_\_\_\_ I was unable to obtain the consultation required by CPLR 3012(a)(1) because three separate good faith attempts were made with three separate physicians and/or podiatrists and/ or dentists to obtain such consultation, and none of those contacted would agree to such consultation.

3b.    \_\_\_\_\_ I intend to rely solely on the doctrine of "*res ipsa loquitur*," and for that reason, no consultation is required.

3c.    \_\_\_\_\_A request has been made for the records of the plaintiff's medical and/or podiatric and/or dental treatment by the defendants, and such records have not been produced.  As such, we are not required to serve a Certificate of Merit until ninety days after such records have been produced.


_____

CHARLES S. GUCCIARDO